CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 30 2006

JOHN F. CORCORAN, CLERK
BY:
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BENJAMIN WADE BOND,<br>Plaintiff, | Civil Action No. 7:05CV00734 |
| v. | MEMORANDUM OPINION |
| RICHARD RICHARDSON, et al.,<br>Defendants. | By: Hon. Glen E. Conrad<br>United States District Judge |

Benjamin Bond, proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against four correctional officers at the Southwest Virginia Regional Jail: Jonathan King, Richard Richardson, Christopher Chapman, and David Bowman. The case is presently before the court on the officers' motion for summary judgment. For the reasons set forth below, the court will grant the officers' motion.

### Factual and Procedural Backgound

At the time this action was filed, Bond was incarcerated at the Southwest Virginia Regional Jail in Abingdon, Virginia.[1] In his complaint, Bond alleges that the officers used excessive force against him on October 16, 2005.

Specifically, Bond alleges that King walked by his cell while he was talking to a nurse, and slammed the door to the tray slot in Bond's face. Bond told King that his conduct was "fucked up" and walked back to his bed. Approximately thirty minutes later, King, Richardson, Chapman, and Bowman entered Bond's cell, cuffed his hands behind his back, and escorted him to another cell. Bond alleges that King subsequently "bulldogged" him in the back, causing him to fall head-first against a wall. Bond alleges that the officers then beat his head against the concrete floor and

---

[1] Bond is no longer incarcerated.

stabbed him in the back. Bond further alleges that the officers injured his jaw, and that the attack resulted in back pain, a swollen eye, and a three-inch cut on his back.

The defendants filed a motion for summary judgment on June 7, 2006. That same day, the court directed Bond to file a response to the defendants' motion within twenty days. As of today, Bond has not responded to the motion for summary judgment or requested an extension of time in which to file a response. Since the twenty-day period has now expired, the motion is ripe for review.[2]

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indust., Inc., 763 F.2d 604, 610 (4th Cir. 1985). However, the non-moving party may not rely upon the mere allegations of his complaint. Fed. R. Civ. P. 56(e). Instead, his response must, with affidavits or other verified evidence, set forth specific facts showing that there is a genuine issue for trial. Id. If the non-moving party fails to so respond, summary judgment, if appropriate, shall be entered Id.

## Discussion

To support their motion for summary judgment, the defendants have provided the following summary of events in sworn affidavits. On October 16, 2005, King went to the area of the jail

---

[2]The court notes that because the plaintiff is no longer incarcerated, he does not benefit from the "prison mailbox rule." See McEvily v. Johnson, 87 Fed. Appx. 898, 899 (4th Cir. 2004) (citing Houston v. Lack, 487 U.S. 266 (1988).

2

where Bond was confined. The jail's nurse, Karen Rife, was in the process of responding to Bond's request for medication for a toothache. Bond demanded Motrin and became angry when Rife offered him Tylenol. Bond began using abusive language toward Rife and King.

King subsequently reported the incident to Bowman, his supervisor. The two officers then returned to Bond's cell, along with Richardson and Chapman. Bowman advised Bond that he was being charged with threatening an officer, and that he would have to stay in solitary confinement until a disciplinary hearing could be held. The four officers then handcuffed Bond and led him from his cell on the upper level of the cell block to the solitary confinement area on the lower level. Along the way, Bond cursed at King, and told him that he would "pay for this."

Once Bond and the four officers got to the first floor, they had to wait for the maximum security door to be opened. Richardson held one of Bond's arms, while Chapman held the other. Both Bowman and King stood behind Bond. While waiting for the door to open, Bond kicked one of his legs backward and struck King in the groin area. Richardson, Chapman, and Bowman subsequently pressed Bond against the door, which automatically opened. Bond then unsuccessfully attempted to break away from the officers. When he refused to go down on the floor himself, the officers used the "officer take-down restraint" procedure to assist him. Richardson, Chapman, and Bowman then held Bond face-down on the floor until leg shackles could be obtained. After the shackles were placed on Bond's legs, the officers took him to solitary confinement. All four officers specifically deny having assaulted, stabbed, or otherwise intentionally harmed Bond.

Once Bond was placed in solitary confinement, he was assessed by Rife. Rife noted that he had a small swollen area on his right cheek and a small scratch on his lower back, which was approximately one-half inch by one-half centimeter. Rife gave Bond an ice pack for his cheek and treated the scratch with an antibiotic ointment and a band-aid.

The following day, King was examined by his physician for persistent groin pain. King alleges that the kick caused a preexisting kidney stone to move and become painful. King swore out a criminal complaint against Bond. Approximately two months later, Bond initiated a cross-warrant against King. Bond ultimately pled guilty to criminal assault and battery. Bond's cross-warrant against King was dismissed.

It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. See Hudson v. McMillian, 503 U.S. 1, 5 (1992); Whitley v. Albers, 475 U.S. 312, 319 (1986). To prevail on an excessive force claim, an inmate must show, objectively, that the use of force was contrary to contemporary standards of decency and that he suffered more than de minimis pain or injury. See Hudson, 503 U.S. at 7, 9. He must also satisfy a subjective component by showing that the force was applied "maliciously and sadistically for the purpose of causing harm" and not "in a good faith effort to maintain or restore discipline." Whitley, 475 U.S. at 320-321; see also Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

Having reviewed the record, the court concludes that Bond has failed to satisfy either component. The officers' unchallenged affidavits establish that they did not intentionally assault Bond without provocation, and that the amount of force used by the officers was both reasonable and necessary, given the fact that Bond kicked King in the groin and attempted to break away from the officers. Bond's allegations to the contrary in his complaint are inconsistent with his guilty plea to assault and battery. Bond's failure to respond to the officers' affidavits, coupled with his admission of assaultive behavior, compels a finding that the officers used force "in a good faith effort to maintain or restore discipline," rather than "maliciously or sadistically for the purpose of causing harm." Whitley, 475 U.S. at 320-321. Further, Bond's medical records demonstrate that

4

the use of force resulted in only minor swelling and a small cut. Such injuries are clearly de minimis. See Taylor v. McDuffie, 155 F.3d 479, 482-483 (4th Cir. 1998) (abrasions on the wrists and ankles, slight swelling in the jaw area, and tenderness in the rib area considered de minimis); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001) (headache, facial abrasion, numbness, and swelling considered de minimis).

## Conclusion

For the reasons stated, the court concludes that there is no genuine issue of material fact and that the officers are entitled to judgment as a matter of law. Accordingly, the court will grant the officers' motion for summary judgment. The Clerk is directed to send certified copies of this opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This 30th day of June, 2006.

_____
United States District Judge

5